UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARKER VOLKL USA, INC.

      Plaintiff,

v.                                              Case No.10-C-0466

OUTDOOR OUTLET, LLC,

      Defendant.

**DECISION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT**

In this diversity action, Marker Volkl USA, Inc., sued Outdoor Outlet, LLC, for $97,000 due for products previously delivered, and Outdoor Outlet counterclaimed against Marker Volkl for wrongful termination of the contract between the parties and promissory estoppel. Marker Volkl is a New Hampshire corporation engaged in the business of selling skis, ski bindings and related equipment to retailers. Outdoor Outlet is a Wisconsin limited liability company that sells sporting goods at retail. Marker Volkl's account receivable has been paid in full, and its claim against Outdoor Outlet has been dismissed. Outdoor Outlet's counterclaims remain. The case is before the Court on Marker Volkl's motion for summary judgment. For the reasons that follow, Marker Volkl's motion will be granted.

**BACKGROUND**

Marker Volkl is in the business of selling skis and related equipment to vendors. (Marker's Statement of Facts, Dkt. 48-1 at ¶ 1 (hereinafter SOF).) Marker Volkl markets two principal brands

– Marker ski bindings and Volkl skis. (SOF ¶ 3). Outdoor Outlet is a sporting goods retailer with its principal place of business in Appleton, Wisconsin. Outdoor Outlet also does business as o2gearshop and operates a website bearing that name. Taylor Olsen is the sole member and president of Outdoor and is actively engaged in the day to day operation of the business. (Outdoor's Statement of Additional Facts, Dkt. 51 at ¶¶ 1, 4 (hereinafter SAF).) Outdoor Outlet purchased both Marker bindings and Volkl skis systems from Marker Volkl for the 2007-08 and 2008-09 ski seasons.

Marker Volkl sells its products to its authorized retailers subject to the agreements and the terms, conditions, prices and policies published in the Marker and Volkl price lists as well as the terms and conditions of the individual invoices. For the 2008-09 ski season, Marker Volkl entered into approximately 1,000 Marker authorized retailer agreements and 650 Volkl authorized retailer agreements – approximately 600 accounts were both Marker and Volkl authorized retailers.

Outdoor Outlet signed a "Marker USA Authorized Retailer Agreement" on March 6, 2008. This is the only written agreement Outdoor Outlet signed with any Marker Volkl entity and the only agreement referenced in Outdoor Outlet's counterclaim. Under the terms of the Agreement, Outdoor Outlet was "deemed a non-exclusive reseller of Marker products." (Decl. of Greg Grip, Dkt. [32], Ex. 1, ¶ 2.) Outdoor Outlet was not obligated by the Agreement to purchase any products from Marker and Marker was similarly not obligated to sell any products to Outdoor Outlet. All orders were subject to acceptance by an officer of Marker. (*Id.*) Outdoor Outlet agreed not to advertise the product at prices lower than the Minimum Advertised Price (MAP) on the Marker Price List. Outdoor Outlet also agreed that if any of its operations adversely affected Marker's image, "as determined in the sole opinion of Marker," Marker was entitled to terminate the

2

Agreement upon five-days written notice and that Outdoor Outlet would take no action to contest the termination and would have no damages or other redress would be available to Outdoor Outlet for the loss of its status. (*Id.* at ¶ 8.) Marker was entitled to terminate the Agreement immediately upon Outdoor Outlet's breach, and either party was entitled to terminate the Agreement with or without cause upon ten days written notice. (*Id.* at ¶ 11.) Finally, the Agreement provided:

> The Agreement supersedes any prior agreements or representations. The Agreement shall be governed by the law of New Hampshire. Past practice and course of dealings between the parties shall not be used to amend the terms of this Agreement. The failure of either party to require performance of any terms or waiver by either party of any breach, shall not prevent subsequent enforcement of such terms nor be a waiver of any subsequent breach. The Agreement may not be modified, except in writing, signed by an authorized officer of Marker.

(*Id.* at ¶ 12.)

For the 2008-09 ski season, Marker Volkl published price lists for both Marker bindings and Volkl skis and provided these lists to Outdoor Outlet. Included within the Volkl price list given to Outdoor Outlet was the Volkl Advertised Pricing Policy, which Marker Volkl refers to as the Minimum Advertised Price policy, or MAP policy. The MAP policy explained that the Minimum Advertised Price reflected Volkl's "unilateral determination that to permit retailers to advertise the sale of ski model/systems below such price will erode Volkl's quality distribution system and superior product image, and will encourage 'free riding' on the service and investment of other Volkl retailers." (Grip Decl., Dkt. [32], Ex. 3, ¶ 1.) The MAP policy by its terms applied to all forms of advertising, including internet displays. (*Id.* at ¶ 2.) However, the policy was not a contract or agreement, but simply described the manner in which Volkl chose to do business in its sole discretion." (*Id.* at ¶ 7.) Volkl expressly reserved the right to change or discontinue the MAP policy at any time, and warned "no account has any right to rely on the continued existence of this policy or any effort by Volkl to enforce it." (*Id.* at ¶ 9.) The MAP policy further provided that

3

"Volkl always reserves the right to choose those retail accounts with which it will do business and the right to accept or reject any purchase order from any account at any time." (*Id.* at ¶ 10.) Finally, the policy states that "Volkl intends to act in its sole interest, based on its own decision, in addressing violations of this policy." (*Id.* at ¶ 12.)

Thus, under both the Agreement with Marker and Volkl's MAP policy, Outdoor Outlet was prohibited from advertising Marker Volkl products below the minimum advertised price set by Marker Volkl. Despite this prohibition, Outdoor Outlet began advertising Marker Volkl products on the internet at prices less than Marker Volkl's MAP. On September 10, 2008, Marker Volkl sent Outdoor Outlet a warning letter advising Outdoor Outlet that it was advertising a price below the MAP in violation of the agreement and had twenty-four hours to resolve the matter. The letter warned Outdoor Outlet that a second offense would result in a sixty-day suspension, and a third offense would lead to an immediate suspension of its account. (Grip Decl., Dkt. [32], Ex. 4.)

Marker Volkl sent Outdoor Outlet a letter concerning a second offense on December 12, 2008. The letter accused Outdoor Outlet of offering discounts on Volkl products on Outdoor Outlet's website through coupon codes in direct violation of the MAP policy, and advised Outdoor Outlet that it was being placed on sixty days suspension, effective that day and continuing until February 13, 2009. Marker Volkl also warned Outdoor Outlet that a third offense would result in immediate suspension of its account. (Greg Decl., Dkt. [32], Ex. 5.)

Marker Volkl contends that Outdoor Outlet continued to violate the MAP policy by offering discounts on Marker Volkl products through coupon codes, advertising Marker Volkl product below MAP on auction sites such as ebay, and selling Marker Volkl products at below MAP with offers of free gifts with the purchase of Marker Volkl products. Outdoor Outlet denies that it continued to violate Marker Volkl MAP policy by offering discounts on Marker Volkl products through

4

coupon codes and advertising Marker Volkl products at below MAP on auction sites such as ebay. As to Marker Volkl's allegation that it was selling Marker Volkl product below MAP and offering free gifts with purchases of Marker Volkl product, Outdoor Outlet asserts that it either had permission of a Marker Volkl representative to go off MAP or was "price matching" with competitors.

In any event, on March 13, 2009, Marker Volkl notified Outdoor Outlet of its decision to terminate the parties' relationship. On April 23, 2009, Marker Volkl sent a supplemental notice of termination advising Outdoor Outlet that the termination would be effective August 1, 2009. Marker Volkl argues that its termination of the Agreement was expressly permitted under the "without cause" termination provision. To repeat, that provision expressly permits either party to terminate the contract "without cause" on ten days written notice to the other party. Because it gave more than ten days notice, Marker Volkl argues that it complied with the express terms of the Agreement and Outdoor Outlet's breach of contract counterclaim fails as a matter of law. Marker Volkl also argues that it was entitled to terminate the agreement for cause based on Outdoor Outlet's repeated violations of its MAP policy. And since the parties' relationship was governed by a contract, Marker Volkl contends that Outdoor Outlet's promissory estoppel claim fails as a matter of law.

Outdoor Outlet, on the other hand, contends that Marker Volkl breached its duties of good faith and fair dealing under the Agreement by enforcing its MAP policy against Outdoor Outlet, but failing to effectively enforce the policy against Outdoor Outlet's competitors. Outdoor Outlet claims that it monitored its competitor's prices on the internet in an effort to maintain competitive prices for its own sales. During the course of its relationship with Marker Volkl, Outdoor Outlet

5

contends that it frequently observed that its competitors that sold Marker Volkl product were advertising below MAP. On several occasions, Taylor Olsen, Outdoor Outlet's president, provided Marker Volkl with lists websites that offered Marker Volkl product at below MAP. Marker Volkl was either unable or unwilling to stop such offerings. Outdoor Outlet contends that as a result it was unable to compete in the marketplace with competitors who were advertising Marker Volkl product at below MAP because customers were able to search the internet and purchase Marker Volkl product at the lower prices. By terminating its Agreement with Outdoor Outlet for violating its MAP policy while failing to take effective action against its competitors, Outdoor Outlet argues that Marker Volkl violated its duties of good faith and fair dealing. Outdoor Outlet also alleged in its counterclaim that it reasonably relied on Marker Volkl's promise to enforce its MAP policy against Outdoor Outlet's competitors and that Marker Volkl's failure to enforce the policy resulted in damage to Outdoor Outlet.

## ANALYSIS

New Hampshire law, which the parties agreed would govern the Agreement, recognizes the duty of good faith and fair dealing. Every contract or duty covered by the New Hampshire Uniform Commercial Code includes an obligation of good faith in its performance and enforcement. N.H. Rev. Stat. § 382-A:1-304. New Hampshire courts have also relied on the RESTATEMENT (SECOND) OF CONTRACTS § 205, stating that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Harper v. Healthsource New Hampshire,* 140 N.H. 770, 775 (1996). Under the duty of good faith and fair dealing parties to a contract must adhere to common standards of decency, fairness, and reasonableness in performing their

6

contractual obligations. A party may be in breach of the duty of good faith if the party evades the spirit of the bargain, exhibits a lack of diligence, slacks off, willfully renders imperfect performance, or interferes with the other party's performance. *Livingston v. 18 Mile Point Drive, Ltd.,* 158 N.H. 619, 624-26, 972 A.2d 1001, 1006-07 (2009); RESTATEMENT (SECOND) OF CONTRACTS § 205, comment D (1981). The duty of good faith and fair dealing excludes "behavior inconsistent with common standards of decency, fairness, and reasonableness, and with the parties' agreed-upon common purposes and justified expectations." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 140, 562 A.2d 187, 191 (1989).

At the same time, "[p]arties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably." *Mills v. Nashua Fed. Sav's and Loan Assoc.*, 121 N.H. 722, 726, 433 A.2d 1312, 1315 (1981). In other words, courts may not use the duty of good faith and fair dealing as a basis for rewriting a contract's plain terms. *Livingston,* 972 A.2d at 1005. The source of "the parties' agreed-upon common purpose and justified expectations" is, of course, the language they used to state their agreement. Thus, a party cannot be found to have breached a duty of good faith for doing precisely what the contract specifically authorizes him to do. *See, e.g., Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis.2d 568, 577, 431 N.W.2d 721, 726 (Ct. App. 1988) ("But where, as here, a contracting party complains of acts of the other party which are specifically authorized in their agreement, we do not see how there can be any breach of the covenant of good faith. Indeed, it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract.").

In light of these principles, Outdoor Outlet's claim that Marker Volkl breached the implied duty of good faith and fair dealing by terminating the Agreement must fail. Marker Volkl offered Outdoor Outlet the opportunity to sell its products on its terms. Although the Agreement that is the subject of Outdoor Outlet's breach of contract claim is with Marker and addresses the sale only of Marker products, Outdoor Outlet contends that it understood the Agreement to apply to both Marker and Volkl products. Marker Volkl denies this but argues that in any event, it was entitled to terminate its relationship with Outdoor Outlet without cause. Indeed, the language of the Agreement could hardly have been more clear: "Either party may terminate this Agreement with or without cause upon 10 days' written notice to the other party." (Grip Decl., Dkt. [32], Ex. 1, ¶ 11.)

Discussing a similar provision in *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, the Seventh Circuit observed:

> There is no ambiguity and the provision does not vest a single party with discretion but rather grants both parties the unfettered right to terminate. Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract. The duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will.

349 F.3d 376, 395-96 (7th Cir. 2003) (internal citations and quotations omitted). Outdoor Outlet cites no New Hampshire authority suggesting a different conclusion should follow here.

Outdoor Outlet's contention that Marker Volkl breached its duty of good faith and fair dealing by failing to effectively police and enforce its MAP policy also fails in light of the unambiguous language of the policy which Outdoor Outlet contends also formed part of their agreement. The MAP policy states: "Volkl reserves the right to change or discontinue this Policy at any time, and no account has any right to rely on the continued existence of this policy or any

effort by Volkl to enforce it." (*Id.*, Ex. 4, ¶ 9.) If Outdoor Outlet did not like the terms under which Marker Volkl offered it the right to buy and sell its product, it should not have signed the Agreement. If it did not like the way in which Marker Volkl enforced its MAP policy, nothing prevented it from terminating the relationship. In fact, Taylor Olsen sent Marker Volkl an email on February 21, 2009, suggesting that Outdoor Outlet was considering just that. (Decl. of Eric J. Meier, Dkt. [33], Ex. 4.) In any event, based on the clear and unambiguous language of the Agreement that Outdoor Outlet claims governed their relationship, the claim that Marker Volkl breached its duty of good faith and fair dealing in terminating the relationship between the parties fails as a matter of law.

The same is true of Outdoor Outlet's claim for promissory estoppel. Because Outdoor Outlet relies on a written contract, its claim for promissory estoppel fails in any event as a matter of law. *See Great Lakes Aircraft Co. v. Claremont,* 608 A.2d 840, 943 (N.H. 1992) ("promissory estoppel is appropriate only in the absence of an express agreement"); *see also Burr v. Melville Corp.,* 868 F. Supp. 359, 365 (D. Me. 1994) ("Under New Hampshire law, promissory estoppel is applied to enforce promises where consideration is lacking or as a remedy for one who relies upon an offer that is subsequently withdrawn."). Even aside from this problem, the claim would fail because Marker Volkl made no promise that it would effectively enforce its MAP policy. In fact, as noted above, Marker Volkl expressly cautioned retailers in its MAP policy that "no account has any right to rely on the continued existence of this policy or any effort by Volkl to enforce it." (Grip Decl., Ex. 4, ¶ 9.) Outdoor Outlet appears to recognize as much since it failed to address Marker Volkl's arguments for dismissal of its promissory estoppel claim in its responsive brief. Finally, regardless of whether the claim has merit, such failure constitutes an abandonment of the claim.

9

*See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir.2003) (holding that negligence claim is deemed abandoned by failure to delineate claim in district court brief in opposition to summary judgment).

In sum, Marker Volkl was expressly entitled to terminate its Retailer Agreement immediately upon breach of the Agreement by Outdoor Outlet and without cause on ten days written notice to Outdoor Outlet. The undisputed evidence before the Court shows that Outdoor Outlet breached the Agreement by selling product below MAP and that Marker Volkl gave Outdoor Outlet more than the minimal notice required. Faced with the clear language of the Agreement and the MAP policy, and the undisputed facts, Outdoor Outlet ignores the express provision of the Agreement it signed and insists that the Court has an obligation to inquire whether the parties' agreed-upon common purpose and justified expectations have been frustrated by Marker Volkl's conduct in this matter. Outdoor Outlet then proceeds to offer as additional material facts the declaration of its owner stating his own expectations and beliefs about how the parties would operate under the Agreement. But it is the terms of the written agreement they signed, not one party's subjective expectations and beliefs, that determine their respective rights and obligations. Based on the clear and unambiguous terms of the Agreement, Marker Volkl was entitled to terminate Outdoor Outlet's right to purchase and sell its product. Marker Volkl's motion for summary judgment is therefore granted and Outdoor Outlet's counterclaim is ordered dismissed. Marker Volkl's motion to exclude the damages opinion of William P. Merrik (Dkt. 34) is denied as moot.

**SO ORDERED** this ___1st___ day of June, 2011.

                                                                      s/ William C. Griesbach
                                                                      William C. Griesbach
                                                                    United States District Judge